UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF RHODE ISLAND

JASON BOUDREAU,
    Plaintiff,

v.

CENTRAL FALLS DETENTION
FACILITY CORP.; WARDEN DANIEL
MARTIN; INVESTIGATOR DAVID
TOMASSO; CORRECTIONAL
OFFICER CARTER; CRYSTAL
CANIGLIA; KRISTEN DAMASO; and
CORRECTIONAL OFFICER DAVIS,
    Defendants.

C.A. No. 20-324-JJM-LDA

ORDER

Jason Boudreau alleges several constitutional and state law violations in his 12-count Amended Complaint against the Central Falls Detention Facility ("Wyatt") and several individual employees (collectively "Defendants"). ECF No. 10.[1] He is currently detained pre-sentencing at Wyatt. Defendants move to dismiss Counts 1 and 3 through 12.

*FACTS*

In evaluating Defendants' motion to dismiss, the Court reviews the plausible facts in Mr. Boudreau's Amended Complaint in the light most favorable to him.

---

[1] Mr. Boudreau has eleven civil cases pending. ECF No. 13 at 5. He has filed six civil cases in this Court, 13-cv-388-WES-LDA, 13-cv-577-ML-LDA, 16-cv-649-WES-LDA, 17-cv-301-WES-PAS, 17-cv-90-WES-LDA, and this case, 20-cv-324-JJM-LDA. He filed his other civil cases in Rhode Island state court and federal court in Connecticut.

*Incident #1–injured ankle and medical malpractice*: Mr. Boudreau alleges that he fell in the prison's recreation yard and injured his ankle and leg. Wyatt personnel treated him with Motrin and ice. Over the ensuing days, his foot and lower leg became more and more black and Wyatt provided no further medical care. After ten days, Wyatt x-rayed his foot, revealing that Mr. Boudreau had a broken ankle and fibula. Wyatt sent him to the hospital where they ordered him a boot, crutches, and compression stockings.

Mr. Boudreau alleges that, because of Wyatt's medical negligence, he suffered from ten days of unnecessary pain resulting from having to climb fifteen stairs to the top tier of his pod and having to climb up to the top bunk.

*Incident #2–lockdown and retaliation*: Mr. Boudreau lived in A-dorm at Wyatt, which consists of two separate rooms. One room is a bunk room, and the other is a day room with bathroom facilities. During a lockdown, Wyatt restricted Mr. Boudreau to the bunk room portion of A-dorm. Mr. Boudreau complained that he could not obtain water or use the bathroom. Warden Martin interceded and explained that detainees could use the bathroom and he placed a water jug inside the dorm room.

Mr. Boudreau filed a grievance. He alleges that after he filed his grievance a correctional officer told him that he had been disrespectful to a correctional officer and that if he had any other issues, he would be fired from his unit pod worker position. Mr. Boudreau then filed another grievance and Defendant Crystal Caniglia fired him in retaliation. Mr. Boudreau appealed the firing and Wyatt reinstated him

to his prior job. Warden Martin told Mr. Boudreau that "if there were any other incidents . . . he would be transferred to another facility . . ." ECF No. 10 ¶ 99.

*Incident #3–state court hearings:* Mr. Boudreau alleges that Wyatt twice failed to tell him he had state court video hearings, causing him to miss them. As a result of his absence, the court passed on the motion.

*Incident #4–seized legal materials:* Mr. Boudreau alleges that Wyatt seized digital legal materials (thumb drives and CDs) from him and refused to return them to him for two months. Instead, he alleges, Wyatt turned them over to the United States Marshals.

## *PROCEDURE*

Mr. Boudreau filed a First Amended Complaint. *Id.* Defendants move to dismiss all but Count II of the Amended Complaint. ECF No. 13.[2] Mr. Boudreau filed an objection and a sur-reply. ECF Nos. 16, 20. Wyatt also replied. ECF No. 18.

## *STANDARD OF REVIEW*

To survive a motion to dismiss for failure to state a claim under Rule 12(b)(6), Plaintiff must present facts that make his claim plausible on its face. *See Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). To state a plausible claim, a complaint need not detail factual allegations, but must recite enough facts at least to "raise a right to relief above the speculative level...." *Id.* at 555. A pleading that offers "labels

---

[2] Two other Wyatt detainees involved in the A-dorm lockdown incident also filed lawsuits–*Grossman v. Donald W. Wyatt Detention Facility*, 20-cv-048-JJM-LDA and *Pennell v. Martin*, 20-cv-116-JJM-LDA. In both cases, the Court determined that the retaliation claim was viable, so Defendants in this case "at this stage of the proceedings . . . do not move to dismiss count [II]." ECF No. 13 at 8.

3

and conclusions" or "a formulative recitation of the elements of a cause of action" will not suffice. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). Nor does a complaint suffice if it tenders "naked assertion[s] devoid of further factual enhancement." *Id.* (quoting *Twombly*, 550 U.S. at 557).

## ANALYSIS

### Count I (Medical Malpractice)

Defendants claim that Mr. Boudreau fails to assert any injury that arises from the alleged medical malpractice. They argue that the ten-day delay between his injury and the x-ray did not cause Mr. Boudreau's pain, but it was the injury itself— an injury that Mr. Boudreau caused through his own actions.

Mr. Boudreau counters that Defendants' negligence in failing to diagnose his broken ankle and fibula and in failing to properly treat him caused him ten days of pain and suffering. During that ten days, Defendants also did not give him a lower tier cell or a lower bunk, which also caused his pain and led to damages. Because Mr. Boudreau has alleged sufficient plausible facts to state a valid claim against Defendants for medical negligence—duty, breach,[3] proximate case, damages—the Court DENIES Defendants' Motion to Dismiss Count 1.

### Count 3 (6th Amendment[4] Right to a Fair Trial)

---

[3] While Mr. Boudreau does not explicitly plead this element, the Court implies it given a more liberal standard of review granted to a pro se filer. That said, it will be incumbent on Mr. Boudreau to prove standard of care and breach by expert testimony at the dispositive motion or trial stage of this litigation.

[4] Mr. Boudreau invoked the 5th Amendment in Count 3 of his Amended Complaint but clarified in his opposition to Defendants' Motion to Dismiss that he meant the 6th Amendment, not the 5th Amendment. ECF No. 16 at 3-4.

4

Mr. Boudreau alleges that Defendants "provide[d] false information regarding the Plaintiff to the U.S. Marshals and/or U.S. Attorney's office in Dec. 2019." ECF No. 10 ¶¶ 214-15. He claims they did this "in retaliation for Plaintiff's filing of a grievance(s)." *Id.* ¶ 216. This caused Wyatt to deny Mr. Boudreau his "right to a fair trial [as] mandated by the Due Process clause...." *Id.* ¶ 217.

Defendants counter by first arguing that to prove a fair trial violation based on fabrication of information, Mr. Boudreau must "prove by a preponderance of the evidence that the officer created false information, the officer forwarded the false information to prosecutors, and the false information was likely to influence a jury's decision." *Garnett v. Undercover Officer C0039*, 838 F.3d 265, 279-80 (2d Cir. 2016). They then point out that Mr. Boudreau fails to state "what specific false information may have been provided or how that information did adversely affect Mr. Boudreau's criminal case." ECF No. 13 at 9.

Here, Mr. Boudreau fails to satisfy the *Twombley* pleading requirements because he neither pleads plausible facts that would support what false information was allegedly given nor states what prejudice may have resulted. While Mr. Boudreau claims that he need not provide exact details underlying his claim, the Amended Complaint does not even hint at any plausible facts that would show that Defendants conveyed false information in support of a 6th Amendment claim. The Court GRANTS the Defendants' Motion to Dismiss Count 3.

### *Count 4 (Equal Protection Clause–14th Amendment)*

Mr. Boudreau claims that Defendants violated his rights to equal protection by seizing his legal materials "for an impermissible reason, which was because the Plaintiff had filed grievances and threatened suit." ECF No. 16 at 5. But in order "[t]o state a § 1983 claim based on violations of the Equal Protection Clause, a plaintiff 'must allege facts plausibly demonstrating that compared with others similarly situated,' the plaintiff was 'selectively treated...based on impermissible considerations such as race, religion, intent to inhibit or punish the exercise of constitutional rights, or malicious or bad faith intent to injure a person.'" *Doe v. City of Pawtucket*, 374 F. Supp. 3d 188, 199 (D.R.I. 2019) (quoting *Mulero-Carrillo v. Román-Hernández*, 790 F.3d 99, 105-06 (1st Cir. 2015)).

The problem with Mr. Boudreau's equal protection claim is that he does not allege and cannot point to anyone who was similarly situated and treated differently, *e.g.,* a detainee that had filed a grievance such as his but was not subject to retaliation based on his protected class. Mr. Boudreau essentially has rehashed his retaliation claim as an Equal Protection Clause claim. Because the Court has recognized that Mr. Boudreau has alleged a plausible claim for retaliation (Count 2), the Court GRANTS Defendants' Motion to Dismiss Count 4.

*Count 5 (Privacy Invasion)*

In Count 5, Mr. Boudreau alleges a violation of his statutory right to privacy under Rhode Island General Laws, § 9-1-28.1. That statute provides in short that every person has a right to privacy including "(1) [t]he right to be secure from unreasonable intrusion upon one's physical solitude or seclusion; (2) [t]he right to be secure from an appropriation of one's name or likeness; (3) [t]he right to be secure from unreasonable publicity given to one's private life; and (4) [t]he right to be secure from publicity that reasonably places another in a false light before the public." R.I. Gen. Laws § 9-1-28.1(a). Section b provides damages under the statute.

Mr. Boudreau alleges that Defendants violated this statute by "assessing, reading, and searching [his] legal mail and materials located on [his] flash drives and CD's that he received from his attorneys. . ." ECF No. 10 ¶ 229. Upon review of the statute, the Court finds that the only section possibly applicable to his allegations is subsection (3), which requires that he "show (1) 'publication' (2) of a 'private fact' (3) that the 'fact which has been made public [is] one which would be offensive or objectionable to a reasonable [person] of ordinary sensibilities,' and (4) damages." *Pontbriand v. Sundlun*, 699 A.2d 856, 864 (R.I. 1997) (quoting R.I. Gen. Laws §§ 9-1-28.1(a)(3)(A)(i)-(ii) and § 9-1-28.1(b)). Mr. Boudreau failed in his pleadings to plausibly allege any private fact that was allegedly published or otherwise made public and would be offensive or objectionable to a reasonable person. He also does not plausibly allege any damages that resulted from any alleged publication.

The Court GRANTS Defendants' Motion to Dismiss on Count 5.

### *Counts 6 & 7 (Cyber Privacy Invasion)*

Mr. Boudreau alleges that Defendants violated two state criminal statutes, R.I. Gen. Laws § 11-52-3 and § 11-52-4.1,[5] when they "accessed, intentionally, without authorization . . . the computer data stored on the Plaintiff's digital legal materials. . ." ECF No. 10 ¶ 258. But he does not allege any injury resulting from any alleged cyber invasion. This allegation is required under R.I. Gen. Laws § 11-52-6(a), which creates a private right of action for violations of these statutes, stating that "[a]ny person injured as a result of a violation of this chapter may bring a civil action. . .". Because Mr. Boudreau does not allege any injury resulting from Defendants' alleged cyber privacy invasion, these claims fail. The Court GRANTS Defendants' Motion to Dismiss on Counts 6 and 7.

### *Count 8 (Miscellaneous Constitutional Violations)*

While Defendants claim that Count 8 is a hodgepodge of unfocused allegations, Mr. Boudreau asserts that it concerns Defendants' search and confiscation of his legal correspondence in violation of the First and Sixth Amendments to the United States Constitution, and denial of his right to attend his state court video hearings. He asserts that these actions violated the attorney-client privilege and access to the courts. ECF No. 20 at 4.

First, Mr. Boudreau alleges that Defendants potentially violated the First, Sixth, and Fourteenth Amendments when they confiscated his legal materials.

---

[5] These two sections involve felony charges for access to and copying of another's computer for fraudulent purposes.

Pretrial detainees have a First Amendment right to send and receive mail while detained, with reasonable limitations allowed for legitimate penological interests. *Thornburgh v. Abbott*, 490 U.S. 401, 407 (1989). Moreover, legal mail to and from a detainee's attorney carries special protections under the First and Sixth Amendments—pointedly that officials cannot read legal mail and cannot open it unless the detainee is present. *See Wolff v. McDonnell*, 418 U.S. 539, 575-76 (1974).

Turning now to the Amended Complaint, a review of Mr. Boudreau's actual allegations is required. He alleges that Defendants seized legal materials related to his cases, including USB flash drives and CDs sent by his attorney, the courts, and the U.S. Attorney's Office. ECF No. 10 ¶¶ 122, 131-34, 136, 143, 146. He also alleges that the CDs and flash drives were password protected and he refused to supply the passwords. *Id.* ¶ 134, 146. Mr. Boudreau alleges that his refusal to give Defendants the passwords led to adverse action in his pending cases. *Id.* ¶ 150. He also alleges that Defendants read his legal mail and materials without his consent and interfered with his outgoing mail. *Id.* ¶¶ 151, 153, 167, 171.

Mr. Boudreau cannot allege that Defendants read his legal documents and at the same time allege that they were password protected and he did not give them access. Superficial allegations that Defendants read his legal materials and correspondence do not pass the plausibility test. *Iqbal*, 556 U.S. at 678 ("a complaint [does not] suffice if it tenders 'naked assertion[s]' devoid of 'further factual enhancement.'") (citing *Twombly*, 550 U.S. at 557). Without plausible facts to show

9

that the legal materials were read by anyone other than Mr. Boudreau, his First and Sixth Amendment claims fail.

Second, Mr. Boudreau alleges that Defendants failed to notify him of a scheduled state court hearing on his motion to dismiss a criminal case and seized his legal materials harming his cases and causing him to "suffer[] adverse action by the court." ECF No. 10 ¶¶ 110-20. He admits, however, that Defendants returned the materials to him the next month. ECF No. 16 at 15.

For this claim to be actionable, Mr. Boudreau "must show actual injury in order to demonstrate a violation of the right of access to the courts." *Boivin v. Black*, 225 F.3d 36, 43 (1st Cir. 2000) (citing *Lewis v. Casey*, 518 U.S. 343, 349 (1996)). Mr. Boudreau's claim fails because he does not plausibly allege actual prejudice to his state court criminal case. The state court did pass his motion to dismiss, but Mr. Boudreau had all his legal materials the next month and could have refiled his motion. He does not allege that the one-month delay caused him any harm or prevented him from doing so. The Court GRANTS Defendants' Motion to Dismiss Count 8.

*Count 9 (Intentional Infliction of Emotional Distress)*

To succeed on a claim for intentional infliction of emotional distress a plaintiff must prove that: "'(1) the conduct must be intentional or in reckless disregard of the probability of causing emotional distress, (2) the conduct must be extreme and outrageous, (3) there must be a causal connection between the wrongful conduct and the emotional distress, and (4) the emotional distress in question must be severe.'"

*Swerdlick v. Koch*, 721 A.2d 849, 862 (R.I. 1998) (quoting *Champlin v. Washington Trust Co. of Westerly*, 478 A.2d 985, 989 (R.I. 1984)). "Liability has been found only where the conduct has been so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community." *Swerdlick*, 721 A.2d at 863 (quoting Restatement (Second) Torts, § 46 cmt. d, at 73).

Mr. Boudreau claims that Defendants caused him "anxiety" when they refused to give him access to his legal materials and caused him to miss his court hearing. ECF No. 10 ¶¶ 336-37. Even taken in his favor, these allegations alone cannot be characterized as so extreme in degree as to meet the pleading standard for an intentional infliction of emotional distress claim. Moreover, Mr. Boudreau's conclusory allegation that Defendants' actions caused him "anxiety" is not sufficient to support a claim requiring severe emotional distress. The Court GRANTS Defendants' Motion to Dismiss Count 9.

*Count 10 (Extortion and Blackmail)*

Mr. Boudreau brings this claim under R.I. Gen. Laws § 11-42-2. "[T]he crime of extortion consists of two basic elements: a verbal threat to place a victim in peril of bodily harm or of harm to his property, accompanied by an intent to compel the victim to do an act against his will." *State v. Sabitoni*, 434 A.2d 1339, 1342 (R.I. 1981). In applying this statute, "the focus should be on a defendant and his or her subjective intent as demonstrated by his or her conduct and by the words he or she used; how

11

the incident would be perceived by a reasonable person is not a relevant factor to the crime of extortion." *State v. Price*, 706 A.2d 929, 933 (R.I. 1998).

Mr. Boudreau has not satisfied the first element of an extortion claim, a threat to place a victim in peril of bodily harm or harm to property. He asserts that Defendants' "threats to (1) issue a disciplinary ticket to the Plaintiff; (2) place the plaintiff in segregation housing; refuse to return Plaintiff's attorney legal correspondence, unless the Plaintiff gave the Defendants the password . . ." constitutes the crime of extortion and blackmail. ECF No. 16 at 14; *see also* ECF No. 10 ¶¶ 341-44. An alleged threat to bring a disciplinary action is not a threat to do bodily harm and neither does a threat to "withhold" a flash drive cause harm to Mr. Boudreau's property. *Id.* Moreover, Mr. Boudreau has failed to allege that Defendant David Tomasso possessed the subjective intent to compel Mr. Boudreau to act against his will in support of the second element. The Court GRANTS Defendants' Motion to Dismiss Count 10.

*Count 11 (Conversion)*

Mr. Boudreau's conversion claim is unsupportable in this context. "[T]he gravamen of an action for conversion lies in the defendant's taking the plaintiff's personalty without consent and exercising dominion over it inconsistent with the plaintiff's right to possession." *Fuscellaro v. Indus. Nat'l Corp.*, 368 A.2d 1227, 1230 (1977). A detainee is not entitled to an expectation of privacy for items maintained within his cell so he cannot allege sufficient plausible facts to support it. As a result,

Mr. Boudreau's conversion claim must be dismissed. The Court GRANTS Defendants' Motion to Dismiss Count 11.

*Count 12 (Supervisory Liability)*

Mr. Boudreau alleges that Defendant Martin is liable under the concept of supervisory liability because he was "aware of Defendant Caniglia's retaliatory conduct . . . including but not limited to, terminating the Plaintiff from his unit worker pod position on December 11, 2019." ECF No. 10 ¶ 368. "Supervisory liability under 42 U.S.C. § 1983 cannot be predicated on the doctrine of respondeat superior." *Sanchez v. Alvarado*, 101 F.3d 223, 227 (1st Cir. 1996) (citing *Gutierrez-Rodriguez v. Cartagena*, 882 F.2d 553, 562 (1st Cir. 1989)). There must be an affirmative link between the supervisor's action or inaction and the subordinate's behavior. *Id.* This link "contemplates proof that the supervisor's conduct led inexorably to the constitutional violation." *Hegarty v. Somerset Cty.*, 53 F.3d 1367, 1380 (1st Cir. 1995).

There is no affirmative link alleged here. In fact, Mr. Boudreau's arguments here are undercut by his own allegation that Defendants reinstated him to his position with back pay after Warden Martin granted his appeal. ECF No. 10 ¶ 93. Any suggestion that there is a link between Ms. Caniglia's alleged retaliatory conduct and Mr. Martin's acts as her supervisor is unfounded. The remaining supervisory liability allegations center on the confiscation of legal materials. The Court concludes that these allegations either do not amount to a constitutional violation or do not

amount to a cognizable claim. The Court GRANTS Defendants' Motion to Dismiss Count 12.

*CONCLUSION*

The Court GRANTS IN PART AND DENIES IN PART Defendants' Motion to Partially Dismiss. ECF No. 13. The Court dismisses Counts 3 through 12. The Court does not dismiss Counts 1 and 2.

IT IS SO ORDERED,

_____
John J. McConnell, Jr.
Chief Judge
United States District Court

October 14, 2020